## Case No. 7,254.

JEFFRIES v. WIESTER et al.

[2 Sawy. 135;[1] 5 Am. Law T. Rep. U. S. Cts. 96.]

Circuit Court, D. California. Dec. 1, 1871.

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

Sharpstein & Hastings, for complainant.
Bartlett, Pratt & Tilden, for defendants.

SAWYER, Circuit Judge. Bill in equity to compel a reassignment of a patent right to a vapor-burner for the state of California, and for an account. The following facts satisfactorily appear from the evidence, and admission of the pleadings: In April, 1870, the complainant, a citizen of Missouri, was the owner of the right for several states, including the state of California, to a patent for an improvement in "vapor-burners," granted to one Ward. The respondents, citizens of California, under the name of Wiester & Co., of whom Wiester appears to be the active man, were, at that time, engaged in the business of introducing, and buying and selling on commission, patent rights in the states, west of the Rocky Mountains; and they represented to complainant that they had arrangements, which gave them superior facilities for introducing and disposing of patent rights on the Pacific coast.

Relying upon these representations, the complainant, in April, 1870, entered into a written agreement with the respondents, whereby, "in consideration of the services of Wiester & Co., as agents, in undertaking the sale of the above mentioned patent, and in further consideration of the said firm putting it properly and advantageously before the public, by means of advertising, and otherwise, for the purpose of making it generally known, and securing customers to purchase rights to the same," it was agreed that respondents should have twenty-five per cent. on all sales of territory amounting to one thousand dollars, and fifteen per cent. on sums above one thousand dollars, and should have a power of attorney, authorizing them to sell rights. It was also stipulated that the whole territory, if sold together, should not be sold for less than five thousand dollars. The commissions were to be reserved out of the money received from sales, and the balance remitted to complainant.

The defendants entered upon their duties as agents under the contract, but from a want of proper efforts on the part of defendants, as alleged by complainant, or because the improvement "did not take well," as claimed by defendants, or some other cause,

with no success. On the 19th of October, 1870, defendants informed complainant that no rights had been sold, except for the counties of El Dorado, Fresno, Kern, and Tulare, and these had been sold for small sums, and through the personal exertions of the complainant. The complainant was pressed for money, and so informed respondents, and frequently urged them to sell, but was as often informed that the patent "did not take well," and that they could not sell.

On October 19, 1870, after being informed of complainant's necessities, and his earnest desire to have sales made; said respondents stated to complainant, that there was another patent for a similar burner in the field, of which they had a good opinion, and which they thought of taking hold of; that they could sell the complainant's rights to the entire state of California, except the counties before named already sold, for the sum of two hundred and fifty dollars, and this was the best that they could do. The complainant relying upon these statements, that a larger sum could not be obtained, and that another burner was about to be introduced, and, being pressed for money, accepted this proposition, and sold and assigned the right to the entire State except those counties already sold, as aforesaid, for said sum of two hundred and fifty dollars, and thereupon executed a deed of assignment therefor to respondent, Boone, the party designated by Wiester & Co., as the purchaser.

In point of fact, the said defendant, Boone, was at the time a member of the said firm of Wiester & Co., and the purchase money was paid by the said firm, and the purchase made and conveyance taken in the name of said Boone, for the use and benefit of said firm —the respondents in this case—although the fact that said Boone was a member of said firm, and that the purchase was made in his name for the benefit of the firm, was, evidently, unknown to complainant at the time of said sale.

Notwithstanding the said representations of respondents, made October 19, that two hundred and fifty dollars was the best price they could get for the entire State remaining unsold, as aforesaid, the respondents, on October 16, and before the said sale, and making of said representations, had actually made a contract for the sale of the two counties of Sonoma and Napa to one J. H. Coe, for the sum of two hundred and fifty dollars, and had received one hundred dollars of the purchase money from said Coe, which fact respondents concealed from the said complainant. The remaining one hundred and fifty dollars was paid, and the conveyance of the right to said counties in pursuance of said contract, was made on the twenty-seventh of the same month, after said sale to Boone.

Soon after the said sale and conveyance to Boone, said respondents, in the name of Boone, sold the right to said patent for the counties of Contra Costa, San Joaquin, Placer and Nevada, in the state of California, to one Van Doren, for the sum of five hundred dollars; the counties of Marin, Mendocino and Lake, to said Coe, November 14, 1870, for eighty dollars; the county of Solano for one hundred and twenty-five dollars; the county of Colusa for one hundred dollars, and the county of Sacramento for two hundred and twenty dollars.

Upon the discovery of the facts, the complainant, on November 18, 1870, within a month after said sale and conveyance to Boone for the benefit of respondents, filed this bill, and soon thereafter, respondents began to obtain re-conveyances of the rights so sold for said counties. Van Doren's purchase was for two hundred dollars, cash down, and his note on three months' time for three hundred dollars. On the fifteenth of December, he re-assigned the right for the four counties so purchased to respondents, Wiester & Co., the consideration received being a surrender of his said note for three hundred dollars, and the assignment of a right for two counties to another burner, called the "Eureka Burner." So, also Coe, in the month of December, re-assigned to respondents the right purchased by him in exchange for a right for the "Eureka Burner."

Re-assignments to respondents have also been obtained of the rights sold by them for the other counties named, except Colusa and Solano. This case is, clearly, within the principle of the leading case of Fox v. Mackreth, and others cited in the notes to that case, in 1 White & T. Lead. Cas. 125, 148, Indeed, that case goes further than the exigencies of the case now in hand require.

In Fox v. Mackreth, a trustee for the sale of an estate, having himself purchased it from the party for whom he was acting, and shortly afterward sold it at a considerable advance, was decreed to be a trustee for his vendor, as to the surplus realized from the second sale. In the language of the learned authors of the note cited, Fox v. Mackreth "was decided, not upon the ground that Mackreth had purchased the estate at an under value, but that he had purchased it from his cestui que trust, while the relation of trustee and cestui que trust continued to subsist between them, and without having communicated to Fox the knowledge of the value of the estate, which he had acquired as trustee." Id. 148, note.

The case has been followed by numerous others, firmly establishing the principle upon which it rests. "An agent employed to sell cannot purchase from his principal, unless he makes it perfectly clear that he has furnished his employer with all the knowledge which he himself possesses." Id. 152, and cases cited.

It is unnecessary to do more under this head than to refer to the case and note cited. In this case, the respondents accepted the

fiduciary relation of agents to sell for the complainant his right to the patented vapor burner in the state of California, upon the terms expressed in the contract. Having assumed these confidential relations, they were bound to give him the full benefit of the facilities which they professed to have, and of all knowledge acquired in the exercise of their trust, which would tend to promote his interests. For some reason their efforts in the discharge of their trust did not prove successful. But while the trust was still existing, and in the exercise of their agency, the respondents contracted to sell two counties for two hundred and fifty dollars, and receive one hundred dollars on account of the purchase.

Yet, with this fact existing, when urged by the complainant to sell in order to relieve his pressing needs, without paying over the money, or communicating the fact of sale, they told him that the best price they could get for the whole state not sold—some fifty odd counties—was two hundred and fifty dollars, and relying upon these representations, he agreed to accept it, and the right was sold and assigned, ostensibly to respondent, Boone, for that sum. The money was paid by the firm, and the conveyance taken for their use and benefit. There was not a mere concealment, but a positive misrepresentation; for it "was not true that two hundred and fifty dollars was the best price they could get for the whole state, when they had actually contracted to sell two counties only for that sum, and had received one hundred dollars on the purchase money. In fact, the result was, that two counties having been already sold for two hundred and fifty dollars, the purchase money less commissions belonged to complainant, and respondents covertly purchased the rest of the state from him and paid for it in part, at least, out of complainant's own money, received, and to be received for the counties already sold.

So far as the evidence shows the dates of sales made subsequent to the assignment to Boone, they were all made before the filing of the bill, and, immediately after the filing of the bill in November, the respondents began to procure re-assignments of the rights sold. The re-assignments from Coe and Van Doren were acquired in December. Doubtless, on the filing of the bill, all sales ceased, and the respondents began to re-acquire, so as to be ready to reconvey at the smallest cost in case a decree should go against them. If this be so, and I think the evidence and admissions of the pleadings justify the inference—the facts known, leading to that conclusion, and there being nothing to the contrary—the singular state of facts is disclosed, that from April 9 to October 10, not a single sale had been effected by the respondents except three or four remote and small counties for a trifling sum accomplished by the personal aid of complainant, while during the

month preceding the filing of this bill, from October 16 to November 18, the respondents sold twelve counties for $1,275, and this immediately after assuring the complainant that the best they could do was to sell the whole state for two hundred and fifty dollars.

For some unexplained cause, the "Ward Burner" "took" much better during the month, while the respondents were acting for themselves, than during the six months immediately preceding, while they were acting for complainant, under a contract requiring extraordinary exertions. I am unable to reconcile the facts disclosed in this case with good faith on the part of the respondents, in their transactions with complainant, and especially in the purchase of the right to the whole state in the name of Boone for the inconsiderable sum of $250, and upon the representations and concealments shown. I am satisfied that the complainant is entitled to have the assignment vacated, and the respondents charged as trustees.

Respondents having re-acquired the rights sold, now insist that they shall be discharged from further liability, upon re-assigning to complainant the right to that part of the state purchased by them. They allege in their answer that the several sales were rescinded on the ground of the worthlessness of the patent. But, clearly, so far as the real transactions are shown, there was no rescinding. The transactions between defendants and Coe and Van Doren are distinctly shown, and they can, in no sense, be regarded as a rescinding of the sales. They are obviously, repurchases, or exchanges upon new and different terms. There is nothing to show how the other rights were reacquired. It is quite manifest, I think, from the general tenor of the facts disclosed, that as soon as the bill in this case was filed, the respondents set themselves at work to re-acquire the rights sold upon the best terms possible under the impression, that these rights could be returned in discharge of their liability, as they now claim.

The complainant, however, declines to accept the rights thus sold, and re-acquired, but prefers to recognize the sales, and receive the proceeds. And this, I think, he is entitled to do. After the fraudulent purchase from their principal, the respondents were acting in their own wrong, wholly without any authority from him. Their power of attorney even, ceased to be operative, for, in the contemplation of the parties, after the assignment to Boone, there was nothing upon which it could operate. But if, otherwise, it contained only a power to sell, and none to purchase, or re-acquire. Respondents had no power to purchase, and complainant was not bound to adopt any of their repurchases. Besides, non constat, but that the vendees during the time the right was held by them had supplied, for the time be-

ing, the market in their respective counties, thereby diminishing the value of the right in those counties, before the re-sale to the respondent. The right re-acquired, therefore, may not have been the same as when sold. In my judgment, the complainant may recognize the sales made by the respondents, and claim the benefit of them, but that he is under no obligation to receive back the rights sold, and re-acquired in the manner indicated. The respondents, therefore, must reconvey the right to all that part of the state remaining unsold, and account to complainant for the proceeds of the portions sold.

It only remains to determine the amount of proceeds to be accounted for. This will be the amount for which sales were made with the deduction of the proper charges. Respondents insist, that since the sale of Solano county was made on credit, and the note has not been paid, they are not to be charged with this item. But it does not appear why it has not been paid.. There is nothing to show that it is not good, or that it has even fallen due. But the sale was not made under respondents' contract of agency. but in their own wrong, and whatever the rights of the parties might have been, had the sale been made in the character of agents under the original contract, I think, they are chargeable with the full value for the county sold; and there is no other evidence of the value than the amount for which it sold. Parties acting in violation of the rights of others will be held to a strict responsibility.

This county has not been re-acquired by the respondents, and it cannot be restored. If the respondents are not liable to account to complainant for the value until paid. then the complainant may lose the whole, by the wrongful act of the respondents. So, also, since the sales were not made under the contract of agency, the terms of that contract do not control the amount of commissions and charges to be allowed.

I think, in a case like this, the respondents cannot justly complain, if they are allowed the charges and commissions actually paid by them in the sale and transaction of the business, and as there is nothing to show that the amount is unreasonable, I shall adopt that principle.

If I understand the answer and testimony of the respondents, in addition to other charges actually paid, they paid twenty-five per cent. commissions. But whatever the percentage, their account shows the amount of the sales to be twelve hundred and seventy-five dollars, and the commissions and other expenses of the transactions, five hundred and forty-seven and 29/100 dollars, leaving seven hundred twenty-seven dollars and seventy-one cents to be accounted for; from which sum deduct two hundred and fifty dollars, the amount paid by respondents for the assignment to Boone, and there will remain

four hundred seventy-seven dollars and seventy-one cents still due, for which complainant is entitled to a decree.

Let there be a decree annulling the assignment to Boone, and requiring a reconveyance to complainant of all that portion of the territory remaining unsold. and for four hundred seventy-seven dollars and seventy-one cents and costs of this action.